# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH PAVONE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 05 C 5129 |
| AEGIS LENDING CORPORATION, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

In his first amended complaint, Plaintiff Joseph Pavone ("Pavone") alleges that Aegis Lending Corporation ("Aegis") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by unlawfully obtaining his consumer report. Presently before us is Pavone's Motion for Class Certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) and his related request that we appoint Edelman, Combs, Latturner and Goodwin, LLC as class counsel. (Mot. at 1.) For the reasons set forth below, we grant Pavone's motion.

## BACKGROUND

In August 2005, Pavone received a letter from Aegis, entitled "Official Pre-Qualification Notice" ("Notice"), informing him that he was pre-qualified for a loan of at least $40,000, based on "information in [his] credit report." (Compl. ¶¶ 6-7 & Ex. A.) According to the amended complaint, Aegis engaged in or arranged the "prescreening" of consumers to receive such notices based on information contained in their consumer reports. (*Id.* ¶¶ 9-10, 18.) Pavone claims that such conduct violated the FCRA, which authorizes use of a consumer's report only with the customer's consent or for certain permissible purposes, such as making a "firm offer of credit." 15 U.S.C. § 1681b©.

(Compl. ¶¶ 19-28.)  He alleges that he did not consent to the disclosure of his consumer report and that the Notice does not constitute a "firm offer of credit."  (Compl. ¶¶ 19, 27-28.)  Pavone seeks to certify and represent a class consisting of "all persons with either a Cook County or DuPage County, Illinois addresses [sic] who were sent material in the form represented by the solicitation attached [to the motion] as Appendix A [the Notice], on or after September 7, 2003 and on or before September 7, 2005."[1]  (Mot. at 1.)  Among other things, he seeks injunctive relief and statutory damages for himself and the potential class members.  (Compl. at 7.)

## ANALYSIS

Pursuant to Rule 23(a), a class may be certified "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  If the numerosity, commonality, typicality, and adequacy requirements are satisfied, the plaintiff must also demonstrate that the proposed class qualifies under at least one of the three subsections of Rule 23(b).  Fed. R. Civ. P. 23(b); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 391 (N.D. Ill. 2006).  Here, Pavone seeks certification under Rule 23(b)(3), which permits class actions where "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P.

---

[1] Pavone originally defined the proposed class to include "(a) all persons with Illinois addresses (b) to whom defendant sent or caused to be sent material in the form represented by <u>Exhibit A</u> [the Notice] © on or after a date two years prior to the filing of this action and (d) before 20 days after the filing of this action and (e) who did not obtain credit in response thereto."  (Compl. ¶ 33.)

23(b)(3). Pavone bears the burden of showing that the proposed class meets the requirements for certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993); *Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 410 (N.D. Ill. 2006). In evaluating a motion for class certification, we do not examine the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178, 94 S.Ct. 2140, 2152-2153 (1974); *Retired Chicago Police Ass'n,* 7 F.3d at 598. We retain broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998); *Cavin*, 236 F.R.D. at 391; *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 298 (N.D. Ill. 2005) (hereinafter *New Cingular Wireless Servs., Inc.*).

  *A.*  *Requirements of Rule 23(a)*

  *1.*  *Numerosity*

Rule 23(a)(1) provides that class treatment is warranted where the potential class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In his motion, Pavone estimates that Aegis sent approximately 53,000 mailers to residents of DuPage and Cook Counties. (Mot. ¶ 16.) Aegis does not contest Pavone's showing of numerosity. Indeed, Aegis acknowledges that it mailed offers of credit in the form of the Notice to 48,757 individuals in DuPage and Cook Counties. (Corr. Mem. in Opp. to Mot. at 4.) Given the undisputedly large number of potential class members, we conclude that joinder is impracticable. *See Cavin*, 236 F.R.D. at 391 (finding estimated 49,000 members sufficiently numerous for class treatment).

*2. Commonality*

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *see Hernandez*, 236 F.R.D. at 411; *Cavin*, 236 F.R.D. at 391-392. As several courts have observed, such a nucleus generally exists "where the defendants have engaged in standardized conduct towards the members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele*, 149 F.3d at 594; *see Cavin*, 236 F.R.D. at 392; *New Cingular Wireless Servs., Inc.*, 232 F.R.D. at 299; *Murray v. Sunrise Chevrolet, Inc.*, No. 04 C 7668, 2006 WL 862886, at *2 (N.D. Ill. Mar. 30, 2006) (hereinafter *Sunrise Chevrolet, Inc.*); *Tremble v. Ocean Bank*, No. 05 C 2624, slip op. at 2-3 (N.D. Ill. Mar. 21, 2006); *Murray v. Cingular Wireless II, LLC*, No. 05 C 1334, slip op. at 3 (N.D. Ill. Dec. 22, 2005) (hereinafter *Cingular Wireless II, LLC*); *see also Emerson v. Aegis Lending Corp.*, No. 05 C 848, slip op. at 3 (E.D. Wis. Aug. 17, 2006) (finding common questions of law or fact where Aegis "accessed consumer information on each individual and sent them identical, or nearly identical, mailings").

Here, Pavone alleges that the common nucleus of operative fact is "that defendant obtained or used (or caused the use) of consumer report information for the purpose of sending plaintiff and the class members the solicitation in the form" of the Notice. (Mem. in Supp. Mot. at 7.) Further, the dispositive legal question is "whether the solicitation complied with the 'firm offer of credit' exception" provided by the FCRA. (*Id.*) Although there may be factual differences among the class members, the primary issue remains whether Aegis violated the FCRA by accessing and relying on consumer report information in deciding who would receive its standardized mailer. We thus agree with Pavone that the proposed class satisfies the commonality requirement. *See Cavin*, 236 F.R.D.

at 392 (finding commonality among claims based on the mailing of a standardized form and further noting that "factual variation among the class grievances will not defeat class certification."); *New Cingular Wireless Servs., Inc*., 232 F.R.D. at 299; *Sunrise Chevrolet, Inc.*, 2006 WL 862886, at *2.

   3.   *Typicality*

A class may not be certified unless the claims or defenses of the representative party are typical of those of the class. Fed. R. Civ. P. 23(a)(3). This inquiry focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The Seventh Circuit instructs that the plaintiff's claim is "typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* (internal quotation omitted).

For the same reasons discussed above with respect to commonality, Pavone's claim bears "the same essential characteristics" as the claims of the larger class. His claim arises from the same practice and course of conduct as those of the other class members: Aegis' prescreening of his consumer report information in determining whether to mail him the Notice. His claim is also grounded on the same legal theory, which is simply that Aegis willfully violated the FCRA by utilizing his consumer report without his consent and without issuing a firm offer of credit. Even if there is some factual variation among the class members' claims, Pavone has sufficiently shown that his claims are typical of the proposed class claims. *See Cavin*, 236 F.R.D. at 392; *New Cingular Wireless Servs., Inc*., 232 F.R.D. at 299; *Tremble*, No. 05 C 2624, slip op. at 2-3; *see also Emerson*, No. 05 C 848, slip op. at 3 (concluding that "the essential nature of each class member's claim will be the same [as Emerson's]: that his or her consumer report was accessed although no firm offer of

credit was made").

*4.    Adequacy of Representation*

Pursuant to Rule 23(a)(4), class certification is appropriate only if "the representative parties will fairly and adequately protect the interests of the class." "The plaintiff must show three factors to prove adequacy: (1) [he or she] does not have conflicting or antagonistic interests compared to the class as a whole; (2) [he or she] is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously." *Cavin*, 236 F.R.D. at 392-393; *see New Cingular Wireless Servs., Inc.*, 232 F.R.D. at 299.

Aegis does not expressly contest that proposed class counsel – Edelman, Combs, Latturner and Goodwin, LLC – is competent and otherwise satisfies the requirements of Rule 23(a)(4). Nor does it challenge that Pavone would "ensure vigorous advocacy." *Cavin*, 236 F.R.D. at 392-393. Nonetheless, Aegis contends that Pavone would not adequately protect class interests because he will be competing with the other members for a finite amount of damages. (Corr. Mem. in Opp. to Mot. at 32-34.) Aegis alleges that, because of its limited assets, it would be unable "to satisfy a judgment or settlement of plaintiff's claims" as the minimum statutory damage award would approach $4.9 million and its total exposure could be $49 million. (*Id.* at 32.) Moreover, Aegis argues that this Court is "not at liberty to reduce the statutory damage award," despite its potential to drive the company into financial ruin. (*Id.*) Pavone's claim, it is argued, thus conflicts with the class interests to the extent that they, along with class counsel, must scramble for any available funds.

Aegis' argument is unavailing in light of the Seventh Circuit's recent decision in *Murray v.*

*GMAC Mortgage Corporation*. 434 F.3d 948, 953-954 (7th Cir. 2006) (hereinafter *GMAC Mortgage Corp.*). There, the Seventh Circuit explained that:

> The reason damages [under the FCRA] can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards . . . combined with [the defendant's] decision to obtain the credit scores of more than a million persons. . . . *An award that would be unconstitutionally excessive may be reduced . . . but constitutional limits are best applied after a class has been certified.* Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries by forcing everyone to litigate independently – so that constitutional bounds are not tested . . . has little to recommend it.

*Id.* (emphasis added); *see also Emerson*, No. 05 C 848, slip op. at 3 (concluding that Aegis' argument is "foreclosed" by *GMAC Mortgage Corp.* and observing that "even if this court were to conclude that [*GMAC Mortgage Corp.*] is inconsistent with earlier . . . precedent, it is still binding on this court"). Accordingly, Aegis' claim that we cannot reduce any potential award appears to be incorrect. Moreover, the fact that Pavone and other class members may have to share the limited proceeds of any judgment or settlement (both of which could be less than the statutory minimum and may or may not jeopardize Aegis' operations) does not render him unfit to be the class representative; indeed, such is the nature of a class action. We do not believe the present circumstances provide any unusual, heightened incentive to Pavone – or his counsel – to resolve the claims to the detriment of other class members. Because Pavone's interests are not antagonistic to those of the proposed class, we conclude that he is an adequate representative under Rule 23(a)(4).[2]

---

[2]Although Aegis alleges that Pavone lacks standing to pursue his claim, it is not clear whether it intends this argument to attack his adequacy as a representative or the propriety of class treatment under Rule 23(b)(3). As we believe the standing issue relates more to the predominance requirement, we address it below.

B.  *Requirements of Rule 23(b)(3)*

1.  *Predominance*

Although related to Rule 23(a)'s commonality requirement, "the predominance inquiry is far more demanding." *New Cingular Wireless Servs., Inc.*, 232 F.R.D. at 301 (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-624, 117 S.Ct. 2231, 2250 (1997)). To satisfy this aspect of Rule 23(b)(3), "the plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims." *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 529-530 (N.D. Ill. 1998).

Citing *Cole v. United States Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004), Aegis contends that individual questions outweigh common issues in this case because the determination of whether it made a firm offer of credit must be assessed on a case-by-case basis. (Corr. Mem. in Opp. to Mot. at 12-24.) It further argues that because the offer could not have been "firm" until the consumer contacted Aegis for all of the loan details, the proposed class members who did not respond to the offer – including Pavone and a majority of the members – lack standing to pursue claims against Aegis. (*Id.*)

We conclude – as have other courts addressing this issue – that "common issues of fact and law stemming from highly generalized proof (the solicitation) predominate over any individualized assessment that may be needed" based on personal responses to the nearly 50,000 mailers. *New Cingular Wireless Servs., Inc.*, 232 F.R.D. at 302; *see Tremble*, No. 05 C 2624, slip op. at 6-7*; Sunrise Chevrolet, Inc.*, 2006 WL 862886, at *2; *Cingular Wireless II, LLC*, No. 05 C 1334, slip op. at 8-9; *see also Emerson*, No. 05 C 848, slip op. at 10-12. Indeed, the Seventh Circuit in *GMAC Mortgage Corporation* clarified its holding in *Cole*, stating that "[w]e do not read *Cole* . . . to require

a consumer-by-consumer evaluation. An offer has value to 'the consumer' if it is useful to the *normal* consumer." 434 F.3d at 955-956. The court also observed that "[t]he statutory definition of 'firm offer' does not ask about how consumers *react*, however, it asks what the offered has done – what terms have been extended, whether they are honored if a consumer accepts." *Id.* at 955. Based on this precedent and the facts of this case, we cannot agree with Aegis that individual issues predominate over the central, unifying issue of whether the form of the standardized Notice constitutes a firm offer of credit under the FCRA. *Id.* at 956 (concluding that analysis of the four corners of the offer is a question that "readily may be resolved for a class as a whole"); *see New Cingular Wireless Servs., Inc.*, 232 F.R.D. at 302; *Emerson*, No. 05 C 848, slip op. at 10-12.

Aegis' standing argument similarly fails. This "argument has nothing to do with standing" and essentially puts the cart before the horse. *Emerson*, No. 05 C 848, slip op. at 10. Here, Pavone and the proposed class members plainly have standing. Each individual received a letter from Aegis in the form of the Notice, and Pavone challenges the legality of its terms on behalf of all. The proposed class does not include individuals who, for example, *never received* an offer from Aegis and thus, would have no case or controversy against the lender. Whether the offer is a "firm offer of credit" shielding Aegis from liability is a legal and factual issue that remains to be resolved, but we cannot reach that ultimate question in determining class certification. *Retired Chicago Police Ass'n,* 7 F.3d at 598 (court may not examine the merits of the case in deciding class certification).

2. *Superiority*

Rule 23(b)(3) also requires a plaintiff to demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "Class treatment is

especially appropriate for consumer claims" because, as here, such actions often involve common factual and legal questions. *New Cingular Wireless Servs., Inc*., 232 F.R.D. at 303; *Cavin*, 236 F.R.D. at 395-396. Moreover, a class action is warranted "where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *New Cingular Wireless Servs., Inc*., 232 F.R.D. at 303 (internal quotation omitted).

Aegis argues that class action treatment is not superior to individual actions because the amount of potential liability "will create crushing pressure for [it] to settle plaintiff's claims or face liquidation of its business." (Corr. Mem. in Opp. to Mot. at 26.) As discussed earlier, however, we have the power to reduce a damages award that would be constitutionally excessive or fatal to Aegis' business. *GMAC Mortgage Corp*., 434 F.3d at 953-954 (commenting that "a judge may evaluate the defendant's overall conduct and control its total exposure" *after* class certification); *see also Sunrise Chevrolet, Inc.*, 2006 WL 862886, at *5 ("Although an extremely large award can raise due process issues, particularly when it is highly disproportionate to the harm suffered, denial of class certification is not necessarily the preferred, or even the appropriate, option."). "Reducing an unnecessarily large statutory damage award is a more palatable option than allowing defendants to commit substantive violations of the law and escape liability essentially because they have violated the rights of too many individuals." *New Cingular Wireless Servs., Inc*., 232 F.R.D. at 304; *see Cingular Wireless II, LLC*, No. 05 C 1334, slip op. at 9-10 (acknowledging that defendant faced significant damages but observing that it "created this exposure when it sent out a mass mailing to approximately 835,939 people"). Moreover, Pavone and his counsel are aware of our authority to reduce such damages and may consider this factor should they engage in settlement negotiations with Aegis. Given the common issues at play, the number of potential claimants, and the relatively

small amount of recovery per person, we conclude that this case is well-suited for class action treatment. *Sunrise Chevrolet, Inc.*, 2006 WL 862886, at *5; *Emerson*, No. 05 C 848, slip op. at 14.

## CONCLUSION

For the above stated reasons, we grant Pavone's motion for class certification and appointment of Edelman, Combs, Latturner and Goodwin, LLC as class counsel. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: 8/31/06